IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUNE MOODY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-397-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*. and Supplemental Security Income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., June Moody ("Moody") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. Moody subsequently petitioned for review to the Appeals Council who rejected review of Moody's case. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

**I. NATURE OF THE CASE**

Moody requests judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. United

States District courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Moody, age 48 at the time of the hearing, completed the sixth grade and has limited reading and writing abilities. Tr. 35. Moody performed past relevant work as a deli cook (unskilled, light) and as cashier (unskilled, light). Tr. 38-39. Moody has not engaged in substantial gainful work activity since her alleged disability onset date of September 30, 2005. Tr. 38. Moody claims she is unable to work because of pain in her

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

legs, hands, arms and sometimes back. Tr. 41-45. Moody rates her average daily pain as level eight on a ten point scale with ten being the highest level of pain. Tr. 41.

Moody received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners. On September 30, 2005, her alleged disability onset date, Moody was hospitalized for a week with Bell's Palsy and a blood clot. Tr. 22. The resulting effect left Moody with left-sided facial weakness, slurred speech, and chronic obstructive pulmonary disease. Tr. 22. Moody did not receive any physical or occupational therapy, nor did she return to her previous employment upon release from her hospitalization. Tr. 38-39.

Moody complains of stinging, burning, and cramping in her legs, as well as similar pain spreading to her hands and arms. Tr. 41, 44. She indicates that both legs are affected, but the condition is worse in her left leg. Tr. 41. She explained that the condition is exacerbated with activity. Tr. 41. On August 17, 2005, Moody underwent noninvasive bilateral lower extremity venous and arterial studies due to pain and swelling in her lower left and right legs. Tr. 22.

On September 5, 2005, Dr. Steven Davis performed a physical examination and determined that Moody has varicose veins bilaterally, but the exam "did not reveal a great deal of pitting edema." Tr. 22. On September 22, 2006, Moody returned to Dr. Davis for a follow up and noted the pitting edema was somewhat better, but that there were a lot of varicosities in her legs. Tr. 22. On her last medical visit of record (October 8, 2007), Dr. Joseph Johnson diagnosed Moody with varicose veins and edema of both legs. Tr. 23.

Dr. Johnson continued Moody's previously prescribed medication of Lasix to help with her condition and pain. Tr. 23.

On September 19, 2006, Dr. Doug McKeown diagnosed Moody with Borderline Intellectual Function. Tr. 23. This diagnosis was confirmed on September 28, 2006 by Dr. Donald Hinton, who added that Moody should be able to "remember, understand, and carry out short, simple instructions" and be able to "concentrate for two hour intervals." Tr. 25.

## V.  Issues

Moody raises three issues for judicial review:

(1) Whether the ALJ erred in mechanically applying the Medical Vocational Guidelines in determining that there were significant jobs existing in the national economy that Moody could perform based on her capacity to perform a full range of "unskilled sedentary work;"

(2)  Whether the ALJ properly applied the Eleventh Circuit's two-part pain standard; and

(3)  Whether the ALJ properly considered Moody's credibility in compliance with the law of the Eleventh Circuit.
*See* Doc. 13 at 5.

## VI.  Discussion

**A.  The ALJ correctly applied the medical vocational guidelines.**

Moody argues that the ALJ's mechanical application of the grids was not in compliance with proper procedures for determining step five of the five-step sequential

evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920. To determine if an impairment may cause "limitations of function or restrictions which limit [the claimant's] ability to meet certain demands of jobs," the limitations must be classified as exertional, nonexertional, or as a combination of both. *See* 20 C.F.R. § 404.1569a(a). Exertional limitations are the "limitations or restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [the claimant's] ability to meet the strength demands of jobs." *See* 20 C.F.R. § 404.1569a(b). The United States Department of Labor has set classifications of jobs based on multiple exertional levels (sedentary, light, medium, heavy, and very heavy) based upon strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(a). Nonexertional limitations are those that affect "only your ability to meet the demands of jobs other than the strength demands," for example anxiety, depression, concentration, understanding and remembering detailed instructions, seeing or hearing, tolerance to physical features of the work setting, or manipulative or postural functions. 20 C.F.R. § 404.1569a(c)(1)(i)-(vi). After review of Moody's medical records, the ALJ found Moody has two limitations. The ALJ accepted as true that Moody felt depressed and that she had difficulty understanding or remembering detailed instructions. Tr. 22, 24-25.

When nonexertional impairments exist, it has been held inappropriate to exclusively rely on the girds, and an ALJ should consult a VE. *Foote*, 67 F.3d at 1559. "This Court has recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of the claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." *Passopulos v. Sullivan*, 976

F.2d 642, 648 (11th Cir. 1992); (citing *Walker v. Bowen*, 826 F.2d 996, 1002-05 (11th Cir. 1987)).  "Therefore, when both exertional and nonexertional limitations affect a claimant's ability to work, the ALJ should make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."  *Srylock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985); (cited in *Johnson v. Barnhart*, 2003 WL 22595220, *5 (11th Cir. 2003)).

In order to arrive at the specific findings necessary, the ALJ must apply a two-step process.  First, the ALJ must determine what restrictions the claimant's exertional limitations impose on the claimant's ability to work.  *Johnson,* 2003 WL 22595220 at *5.  Second, the ALJ must determine if the claimant's nonexertional limitations prohibit a wide range of work from being available to the claimant at the work level restriction imposed by the exertional limitations.  *Id.*  If the ALJ concludes that the nonexertional limitations do impose unacceptable limitations in the available work options at a certain level, then a VE is required to determine whether a wide range of jobs is still available to the claimant.  *Id.*  If the ALJ concludes, however, that the nonexertional limitations do not impact the claimant's ability to obtain work at a certain level, the ALJ may rely on the grids.  *Id.*

Since the ALJ has accepted that both exertional and nonexertional limitations exist, the only question left to address is whether the ALJ made "specific findings as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."

*Srylock*, 764 F.2d at 836.  If the ALJ found that the nonexertional limitations are severe, then he should have consulted a VE.  *Johnson,* 2003 WL 22595220, at *5.  If the ALJ found that the nonexertional limitations are not severe, then he was permitted to exclusively rely on the grids.  *Johnson,* 2003 WL 22595220, at *5.

First, the treatment records from Dr. David C. Ghostley reveal no clinical or laboratory tests which confirm that Moody has a depressive disorder severe enough to conclude that Moody cannot perform a wide range of employment at her given work capacity level.  Tr. 265-266.  Further, no other physician concludes that Moody has severe enough depressive symptoms from which the Commissioner might find Moody cannot perform a wide range of employment at her given work capacity level.  Moody rates her depression as a two on a scale from one to ten, with ten being the highest.  Tr. 265.  The treatment records only indicate "depressive symptoms," but not an actual diagnosis for a depressive disorder.  Moody was referred to a psychiatrist to address her depression symptoms, but there are no records on any subsequent visit with a psychiatrist or at any other mental health facility.  In addition, no physician found that Moody has any mental issues which merit psychotropic medications.

Next, the Mental Residual Functional Capacity Assessment records from Dr. Donald E. Hinton reveal only mild restriction of activity of daily living, mild difficulties in maintaining social functioning, and moderate limitation in maintaining concentration, persistence, or pace.  The ALJ considered Dr. Hinton's notation that Moody should be able to remember, understand, and carry out short, simple instructions.  The ALJ also

considered Dr. Hinton's notation, which was confirmed by Moody's own admission in her testimony, that she is able to attend and concentrate for two hour intervals.

Finally, Moody asserts that her pain is a nonexertional limitation in and of itself. Moody cites *Foote* which states that "pain is clearly a non-exertional impairment that limits the range of jobs the claimant can perform" though this quote is actually in *Walker v. Bowen*. 826 F.2d at 1003; *see* Doc. 13 at 6. The Eleventh Circuit in both *Foote* and *Walker* hold that pain can be a nonexertional impairment. *Foote*, 67 F.3d at 1559; *Walker*, 826 F.2d at 1003. However, in both cases, pain was discussed as a disabling factor standing alone and not as a result of an underlying cause. In 20 C.F.R. § 404.1569a(b), exertional limitations are the "limitations or restrictions imposed by [the claimant's] impairment(s) and *related symptoms*, *such as pain*, that affect [the claimant's] ability to meet the strength demands of the job" (emphasis added). Here, Moody's pain is a related symptom arising as a result of her varicose veins, and not the source of the disabling symptom. Moody, in her own brief, discusses the two-part pain standard, and states therein that the pain is "arising from the condition." *See* Doc. 13 at 10. Citing gaps in treatment and eventually a complete lack thereof, the ALJ found the medical records and Moody's subjective accounts to be lacking evidence to conclude Moody suffers pain to a disabling degree.

In addition, the Hearings, Appeals, and Litigation Law Manual (HALLEX) published by the Social Security Administration's Office of Disability Adjudication and Review ("ODA") contains instructions and guiding principles used by employees of ODA, including the ALJs and Appeals Council, in processing and adjudicating claims. In

Section I-2-5-50, the HALLEX outlines the ODA's intent as to when to obtain a VE. Section 50(A) sets forth when "an ALJ *may* need to obtain a VE's opinion." HALLEX I-2-5-50, Social Security Administration (September 28, 2005), *available at* http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-50.html (emphasis added). An ALJ may need to obtain a VE's opinion if the determination includes: (1) past relevant work; (2) any other work where the claimant's residual functional capacity falls between two exertional levels; (3) the claimant has solely nonexertional limitations; or (4) the claimant has a combination of exertional and nonexertional limitations. *Id.* Section 50(B) sets forth when an "ALJ *must* obtain a VE's opinion." *Id*. (emphasis added). An ALJ must obtain a VE's opinion only when directed by the Appeals Council or a court. *Id.* As guiding principles promulgated by the ODA, it is evident from the language of the manual that the intent of the ODA is to grant discretion to the ALJ as to when to confer with a VE. Under the HALLEX a VE is mandatory only when the Appeals Council or a court directs an order to the ALJ to obtain a VE opinion. As an internal guidance tool, it would be "a very big assumption" to assume that the HALLEX carried the force of law. *George v. Astrue*, 338 Fed. Appx. 803 (11th Cir. 2009); *see also Childs v. Astrue*, 2009 WL 902614, *6 (M.D. Ala. 2009) (explaining that the HALLEX lacks the force and effect of law and is, therefore, not binding on an ALJ or the courts). The HALLEX is not an independent basis for relief against the Commissioner; however, the HALLEX is persuasive authority for the Court to consider to resolve whether and when the ALJ must obtain an opinion from the VE.

The Court holds that the ALJ made the specific findings necessary to determine that the nonexertional limitations are not severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations and the ALJ's exclusive reliance on the grids was not in error.

**B.     The ALJ correctly applied the Eleventh Circuit two-part pain standard.**

Moody argues that the ALJ failed to properly apply the Eleventh Circuit's two-part pain standard. More specifically, Moody argues the ALJ did not properly apply step two of the pain standard. The government responds that the ALJ complied with both agency regulations and Eleventh Circuit case law when he assessed Moody's credibility.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones*, 190 F.3d at 1228. The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms. It explained that

> the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).

A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown*, 921 F.2d at 1236. "Indeed, in certain situations, pain alone can be disabling, even when its

existence is unsupported by objective evidence." *Foote*, 67 F.3d at 1561. "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)).

An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician, and evidence of how the pain affects the claimant's daily activities and ability to work. *See* 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

A claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown*, 921 F.2d at 1236. Testimony from a claimant alone is not conclusive evidence of disability. *See Macia v. Bowen*, 829 F.2d 1009, 1011

(11th Cir. 1987). Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006). An ALJ's credibility findings are an important factor in the application of the pain standard. *Wilson,* 284 F.3d at 1225. The Eleventh Circuit has held that even when an ALJ does not "cite or refer to the language" of the two-part test, if he made the proper findings and his discussion indicates that the standard was applied, the court may accept this as a proper application of the standard. *Id.* at 1225-26.

Here, no party disputes that Moody's varicose veins and edema constitute an underlying medical condition. The ALJ did not find objective medical evidence to confirm the severity of the pain Moody alleges. In fact, the ALJ walks through each and every medical visit on record in making this determination. *See* Tr. 22-24. Also, the ALJ concedes that Moody is not "a perfectly healthy individual" and further concedes that Moody "may occasionally experience some degree of pain or discomfort" as a result of her condition, but found that Moody's "allegations of pain and resultant limitations seem unreasonable when considering the medical records and the claimant's testimony." Tr. 24. Although the ALJ did not explicitly refer to the pain standard he clearly analyzed the steps. Since the ALJ analyzed Moody's pain in compliance with the two-part pain standard, the only question that remains is whether the ALJ explicitly outlined his reasons for discrediting the severity of Moody's pain as not disabling.

Here, the ALJ found that Moody's credibility was undermined by her lack of ongoing medical treatment, wide gaps in the treatment that was received, medical records

with findings of normal or mild to moderate, and statements by multiple physicians that she is capable of working in a sedentary setting. Tr. 24-25. The ALJ found it "reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a disabling degree, she would have presented to her physicians for ongoing treatment." Tr. 24. The ALJ gave "significant weight" to the statements and medical findings of several doctors, created a time line of all medical treatments received, and explicitly discusses the findings of five physicians in detail prior to arriving at his credibility finding. Tr. 22-25.

The Court finds the record provides substantial evidence for the ALJ's credibility findings. Consequently, there is no error in the ALJ's credibility determination that Moody's testimony alone or in combination with other medical evidence in the record does not establish that Moody's pain rises to a severity that is disabling to meet the classification of a disability.

**C.   The ALJ properly considered Moody's credibility in compliance with Eleventh Circuit law.**

Moody argues that the ALJ erred in considering her credibility. More specifically, Moody asserts that the ALJ did not develop the record as it pertains to her financial inability to seek continued medical care. Moody claims that the ALJ issued a negative credibility finding based on Moody's lack of ongoing medical treatment without considering first that financial inability is an underlying factor to her lack of ongoing medical treatment.

The Eleventh Circuit has held that "'refusal to follow prescribed medical treatment

without a good reason will preclude a finding of disability;'" but the court also stated that "'poverty excuses noncompliance.'" *Ellison,* 355 F.3d at 1275 (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). However, an ALJ is only required to determine whether the claimant is financially able to seek ongoing treatment and fill prescriptions when noncompliance is the sole ground for denial of disability benefits, and the record contains evidence that the claimant is financially unable to seek treatment. *Id.*

It is the duty of the ALJ to develop a full and fair record.[5] *Id.* at 1276. The burden of proving disability still rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows the ALJ and the Commissioner to reach the proper conclusion. *Id*. at 1276; 20 C.F.R. § 416.912(a). If a claimant is represented by counsel, the ALJ does not have a heightened duty to develop the record. *Leiter*, 377 Fed. Appx. at 949. Moody had counsel. Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

Here, the ALJ clearly cited Moody's lack of ongoing treatment as a determining factor as to why he did not grant her disability status. Moody is correct in her claim that the ALJ did not consider her financial inability as an underlying cause for her lack of ongoing treatment. However, Moody did not present to the ALJ the sufficient evidence required by the Eleventh Circuit that would require him to make a determination of Moody's financial situation. The only reference to Moody's finances are a few scattered lines within the hearing transcript that only establishes that she does not have insurance or

---

[5] The ALJ will develop a claimant's complete medical history for at least the 12 months preceding the month in which the claimant's application is filed. *See* 20 C.F.R. § 416.912(d).

income of her own, and that she is only unable visit a specialist, as opposed to a primary care physician.  Tr. 47.  The Court does not find this evidence sufficient to have triggered the requirement for the ALJ to make a finding of financial ability.  It is the claimant's responsibility to submit the proper evidence to place an issue before the ALJ.  Not only is the record wanting of evidence on financial inability, it was not specifically raised before the ALJ to alert him to the issue.

Additionally, noncompliance is not the sole factor the ALJ used to reach his negative credibility finding.  Although, he clearly found that Moody's lack of ongoing treatment and lack of pain medication undermines her credibility regarding the pain rising to a disabling degree, he just as clearly outlined instances in the medical records, from treatment Moody did obtain, that are inconsistent with Moody's subjective testimony of disabling pain.  The ALJ discusses giving "significant weight" to the medical findings of Dr. Joseph Johnson, Dr. Camilla Jordan-Graves, Dr. Doug McKeown, and Dr. Donald E. Hinton in reaching his credibility finding.  Tr. 24-25.  One of the principle reasons the ALJ discredited Moody's testimony was that her assertions of disabling pain were not supported by the medical evidence in the record.

The Court holds that the ALJ explicitly detailed why he chose to discredit Moody's subjective testimony in compliance with Eleventh Circuit law.  The Court further holds that Moody failed to provide sufficient evidence to meet their burden and trigger a review of Moody's financial status.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 7th day of July, 2011.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE